1

2

3

4

5                    **UNITED STATES DISTRICT COURT**

6                          **DISTRICT OF NEVADA**

7

8    ALEJANDRO AVILES-PEREZ,

9            Petitioner,                              3:13-cv-00173-RCJ-VPC

10   vs.
                                                     **ORDER**
11   ROBERT LeGRAND, *et al.*,

12           Respondents.

13   _____/

14

15   <u>Introduction</u>

16          This habeas corpus action is brought by Alejandro Aviles-Perez, a Nevada prisoner convicted

17   of one count of sexual assault with a minor under the age of 14 and four counts of lewdness with a

18   child under the age of 14.  Aviles-Perez's first amended federal habeas corpus petition is before the

19   court on its merits.  The court will deny Aviles-Perez's petition.

20   <u>Factual Background and Procedural History</u>

21          In its ruling on Aviles-Perez's direct appeal, the Nevada Supreme Court stated:

22             Respondent State of Nevada charged appellant Alejandro Aviles-Perez by
          criminal information with two counts of sexual assault and six counts of lewdness.
23        The charges stemmed from Aviles-Perez's sexual abuse of K.A.  The jury found
          Aviles-Perez guilty of one count of sexual assault and five counts of lewdness but
24        returned a not-guilty verdict on the remaining sexual assault count and lewdness
          count.

25

26

1   Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30, p. 1.[1]  The Nevada Supreme

2   Court described the factual background of the case, as revealed by the evidence at trial, as follows:

3           Aviles-Perez was convicted of one count of sexual assault with a child under
        the age of 14 years and five counts of lewdness with a child under the age of 14 years.
4       His convictions stemmed from his abuse of K.A. on three separate occasions.  K.A.
        testified that in 2004, when she was nine years old, Aviles-Perez came into her
5       bedroom and undressed her.  She explained that during this encounter, he fondled her
        breasts, inserted his penis into her anus, and digitally penetrated her vagina with his
6       fingers.

7           K.A. testified that the second incident occurred shortly before her mother's
        death, when she was 10 years old.  She explained that Aviles-Perez again fondled her
8       breasts and inserted his penis into her anus.  K.A. testified that during this encounter,
        her mother entered the room and discovered that Aviles-Perez was sexually abusing
9       her.  K.A.'s sister, A.A., who shared a bed with K.A., testified that she woke up that
        night because her mother entered the room and, when she did, she remembered that
10      Aviles-Perez was lying on top of K.A.  Both K.A. and A.A. testified that there was a
        family meeting that night about the sexual abuse.  According to their testimonies,
11      Aviles-Perez asked the family not to call the police.  K.A. explained that during this
        discussion, Aviles-Perez promised "that he'll stop," while A.A. testified that he stated
12      "he wasn't going to do that again and that he was going to try to change."  A.A. also
        corroborated K.A.'s testimony that Aviles-Perez was wearing shorts that evening.
13
14          K.A. testified that the third encounter occurred after her mother's death, when
        K.A. was still 10 years old.  K.A. explained that Aviles-Perez took her into his
15      bedroom, removed her shirt and bra, "lick[ed]" her breasts, and asked her if she "fe[lt]
        anything."  K.A. responded that she did not.  She testified that at some point during
16      2005, she disclosed to her cousin, P.F., that Aviles-Perez was abusing her.  This was
        corroborated by P.F., who testified that K.A. disclosed a "secret" to her, and that K.A.
17      did not want anyone else to find out.  Ultimately, K.A. ran away from home and
        disclosed Aviles-Perez's abuse to one of her aunts and Child Protective Services.

18  *Id*. at 8-9.

19  Aviles-Perez appealed his convictions to the Nevada Supreme Court.  *See* Notice of Appeal,

20  Exhibit 21.  On April 28, 2011, the Nevada Supreme Court reversed Aviles-Perez's conviction

21  as to one count of lewdness with a child under the age of 14 (Count 2), and affirmed his other

22  convictions.  *See* Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30.  The

23  state district court -- Nevada's Eighth Judicial District Court -- entered an amended judgment of

24  conviction on June 8, 2011.  *See* Amended Judgment of Conviction, Exhibit 33.

25

26          [1] Unless otherwise specified, the exhibits referred to in this order are those filed by Aviles-Perez,
    and found in the record at ECF Nos. 17, 18, 19 and 20.

On June 30, 2011, Aviles-Perez filed a post-conviction petition for writ of habeas corpus in the state district court.  *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 35.  After counsel was appointed, Aviles-Perez filed a supplemental petition.  *See* First Supplemental Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 41.  The state district court denied the petition during a hearing on March 13, 2012, and filed a written order on April 4, 2012.  *See* Transcript of Proceedings, March 13, 2012, Exhibit 48; Findings of Fact, Conclusions of Law and Order, Exhibit 50.

Aviles-Perez appealed from the denial of his state habeas petition.  *See* Notice of Appeal, Exhibit 49.  On February 13, 2013, the Nevada Supreme Court affirmed.  Order of Affirmance, Exhibit 58.

Aviles-Perez initiated this federal habeas corpus action on April 8, 2013.  *See* Application to Proceed *in Forma Pauperis*, filed April 8, 2013 (ECF No. 1).  Counsel was appointed (ECF Nos. 5, 9).  With counsel, Aviles-Perez filed a first amended petition on March 11, 2014 (ECF No. 16).  On April 14, 2014, respondents filed an answer (ECF No. 22), and on July 7, 2014, Aviles-Perez filed a reply (ECF No. 26).

Standard of Review

28 U.S.C. § 2254(d) sets forth the primary standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

4

1  <u>Analysis</u>

2      <u>Ground 1</u>

3      In Ground 1 of his first amended habeas corpus petition, Aviles-Perez claims that he was

4  denied his federal constitutional right to effective assistance of trial counsel.  *See* First Amended

5  Petition (ECF No. 16), pp. 10-18.  Ground 1 has seven subparts, designated Grounds 1A, 1B, 1C,

6  1D, 1E, 1F and 1G.

7      In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two

8  prong test for analysis of claims of ineffective assistance of counsel:  the petitioner must demonstrate

9  (1) that the defense attorney's representation "fell below an objective standard of reasonableness,"

10  and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a

11  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

12  would have been different."  *Strickland*, 466 U.S. at 688, 694.  A court considering a claim of

13  ineffective assistance of counsel must apply a "strong presumption" that counsel's representation

14  was within the "wide range" of reasonable professional assistance.  *Id.* at 689.  The petitioner's

15  burden is to show "that counsel made errors so serious that counsel was not functioning as the

16  'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  And, to establish

17  prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had

18  some conceivable effect on the outcome of the proceeding."  *Id* at 693.  Rather, the errors must be

19  "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.

20      Where a state court has adjudicated a claim of ineffective assistance of counsel, under

21  *Strickland*, establishing that the decision was unreasonable under AEDPA is especially difficult.

22  *See Richter*, 562 U.S. at 104-05.  In *Richter*, the Supreme Court instructed:

23      The standards created by *Strickland* and § 2254(d) are both highly deferential,
        [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct.
24      2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly"
        so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)].  The *Strickland* standard is a
25      general one, so the range of reasonable applications is substantial.  556 U.S., at 123,
        129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating
26      unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When

                                                5

1
2

§ 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

3   *Richter*, 562 U.S. at 105; *see also Cheney*, 614 F.3d at 994-95 (acknowledging double deference

4   required to state court adjudications of *Strickland* claims).

5       In analyzing a claim of ineffective assistance of counsel, under *Strickland*, a court may first

6   consider either the question of deficient-performance or the question of prejudice; if the petitioner

7   fails to satisfy one prong, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

8       In Ground 1A, Aviles-Perez claims that his federal constitutional right to effective assistance

9   of trial counsel was violated because "trial counsel failed to communicate with [him] to adequately

10  prepare a defense." First Amended Petition, p. 11. Aviles-Perez states that "[t]rial counsel met only

11  twice with [him] prior to trial, despite the fact that he was incarcerated for 385 days prior to and

12  during trial," and that he "tried on numerous occasions, to contact his trial attorneys, but was left out

13  of the loop." *Id*. Aviles-Perez argues that he "could have provided counsel with the names of

14  multiple people that could have helped to clear [him] of any wrongdoing." *Id*.

15      The Nevada Supreme Court denied this claim on its merits, on the appeal from the denial of

16  Aviles-Perez's state habeas petition, as follows:

17
18
19

Sixth, appellant claims that the district court erred by denying his claim that counsel was ineffective for failing to communicate with him in preparation for his defense. The district court determined that appellant failed to demonstrate prejudice because he failed to demonstrate that further communication would have changed the result at trial. We conclude that the district court did not err by denying this claim.

20  Order of Affirmance, Exhibit 58, pp. 4-5.

21      In his first amended petition, and his briefing of this issue, Aviles-Perez does not identify the

22  witnesses whose names he claims he would have provided to his counsel. *See* First Amended

23  Petition, p. 11; Reply (ECF No. 26), pp. 5-7. Nor does Aviles-Perez make any allegation, or proffer

24  any evidence, regarding what information any such witnesses had, or how they would have testified.

25  *See id*. In short, Aviles-Perez makes no showing that he was prejudiced by his counsel's alleged

26

1   failure to adequately communicate with him.  The state courts' denial of the claim asserted by

2   Aviles-Perez as Ground 1A of his first amended habeas petition was reasonable.

3            In Ground 1B, Aviles-Perez claims that his federal constitutional right to effective assistance

4   of trial counsel was violated because "trial counsel was ineffective for failing to call a

5   psychiatric/psychological expert at trial."  First Amended Petition, p. 11.  Aviles-Perez argues, in this

6   regard, that his counsel should have called "a defense expert who could have testified to whether,

7   given K.A.'s history, there were reasons to doubt her testimony."  *Id*. at 12.

8            The Nevada Supreme Court denied this claim on its merits, on the appeal from the denial of

9   Aviles-Perez's state habeas petition, as follows:

10           The district court found that appellant failed to demonstrate prejudice because he
             failed to establish that additional investigation would have changed the result at trial.
11           *See Browning v. State*, 120 Nev. 347, 357, 91 P.3d 39, 47 (2004) ("[S]peculation does
             not demonstrate prejudice.").  We conclude that the district court did not err in
12           denying these claims.

13   Order of Affirmance, Exhibit 58, p. 3.

14           In his first amended petition, and his briefing of this issue, Aviles-Perez does not make any

15   allegation, or proffer any evidence, regarding how any expert would have testified.  *See* First

16   Amended Petition, pp. 11-12; Reply, pp. 7-9.  Therefore, Aviles-Perez makes no showing that he

17   was prejudiced by his counsel's alleged failure to call an expert witness.

18           In Ground 1C, Aviles-Perez claims that his federal constitutional right to effective

19   assistance of trial counsel was violated because "trial counsel should have moved for a

20   psychiatric/psychological evaluation of K.A."  First Amended Petition, p. 12.  In support of this

21   claim, Aviles-Perez argues:

22           A psychological examination could have explored not only the effect that her
             mother's prolonged illness, absence, and ultimately death had on K.A., but also the
23           effect of her father meeting a new woman and beginning a new family with her, and
             of K.A. being subject to her aunt's authority at home.  All of these are critical life
24           changes that could have affected K.A.'s motivation to fabricate elements of her story.

25   *Id*. at 13.

26

7

1    The Nevada Supreme Court denied this claim on its merits, on the appeal from the denial of

2    Aviles-Perez's state habeas petition, as follows:

3        Eighth, appellant claims that the district court erred by denying his claim that
         counsel was ineffective for failing to move for a psychiatric evaluation of the victim.

4        The district court determined that appellant failed to demonstrate deficiency because
         there was not a compelling need for an evaluation of the victim. Even assuming that

5        counsel could have obtained a psychological evaluation of the victim, appellant failed
         to demonstrate prejudice because he did not establish that the outcome of the

6        examination would have been favorable or that it would have changed the result at
         trial. We conclude that the district court did not err by denying this claim.

7

8    Order of Affirmance, Exhibit 58, p. 5.

9        Aviles-Perez has not made any allegation, and has not proffered any evidence, with respect to

10   what a psychological evaluation of K.A. would have shown. This court agrees with the state courts

11   that Aviles-Perez has made no showing of prejudice with respect to this claim of ineffective

12   assistance of trial counsel.

13       In Ground 1D, Aviles-Perez claims that his federal constitutional right to effective assistance

14   of trial counsel was violated because "[t]rial counsel failed to interview, as part of his pre-trial

15   investigation, various witnesses who the state intended to call at trial." First Amended Petition,

16   p. 13. Aviles-Perez focuses here on his trial counsel's failure to interview K.A. and A.A. before

17   trial. *See id.* at 13-14.

18       The Nevada Supreme Court denied this claim on its merits, on the appeal from the denial of

19   Aviles-Perez's state habeas petition, as follows:

20       The district court found that appellant failed to demonstrate prejudice because he
         failed to establish that additional investigation would have changed the result at trial.

21       *See Browning v. State*, 120 Nev. 347, 357, 91 P.3d 39, 47 (2004) ("[S]peculation does
         not demonstrate prejudice."). We conclude that the district court did not err in

22       denying these claims.

23   Order of Affirmance, Exhibit 58, p. 3.

24       Aviles-Perez makes no argument, and proffers no evidence, regarding what his trial counsel

25   might have learned had he interviewed A.A. before trial, and how any information gained from such

26   interview would have aided the defense. *See* First Amended Petition, pp. 13-14; Reply, pp. 9-10.

8

1      Aviles-Perez argues, in his reply, that, had his trial attorney interviewed K.A. before trial,

2   trial counsel "could have observed K.A.'s flat affect when describing the alleged abuse, and could

3   have conducted further investigation, spoken to her friends, called expert witnesses ..., ascertained a

4   need for an evaluation of K.A. ..., and followed any number of other theories of defense."  Reply,

5   p. 9.  However, it is plain that any claim that the defense would have been benefitted from counsel

6   interviewing K.A. before trial, and seeing her alleged "flat affect," is pure speculation.

7      Aviles-Perez also argues in his reply that K.A.'s testimony at trial differed from what she had

8   told Child Protective Services, and if his trial counsel had interviewed K.A. before trial, "it is likely

9   that he would have received yet another version of the story, with details he could have investigated,

10   allowing him to corroborate/discredit sections of K.A.'s testimony."  Reply, p. 10.  This, too, is

11   speculation.  Moreover, trial counsel did cross-examine K.A. regarding the discrepancies pointed out

12   by Aviles-Perez between her testimony at trial and her statements to Child Protective Services.  *See*

13   Reply, p. 10; Transcript of Jury Trial, July 21, 2009, Exhibit 12, pp. 63-65, 75-77.

14      This court agrees with the state courts that Aviles-Perez has not shown prejudice resulting

15   from his trial counsel's failure to interview K.A. or A.A. before trial.

16      In Ground 1E, Aviles-Perez claims that his federal constitutional right to effective assistance

17   of trial counsel was violated because "trial counsel was ineffective for failing to properly present

18   petitioner's *Batson* challenge."  First Amended Petition, p. 14.

19      The Nevada Supreme Court denied this claim on its merits, as follows, on the appeal from

20   the denial of Aviles-Perez's state habeas petition:

21          Fifth, appellant claims that the district court erred by denying his claim that
        counsel was ineffective for failing to make a legal argument after raising several

22      *Batson* challenges.  *Batson v. Kentucky*, 476 U.S. 79 (1985).  Although the district
        court erred by denying this claim on the ground that appellant failed to raise it on

23      direct appeal, *see Bolden v. State*, 99 Nev. 181, 183, 659 P.2d 886, 887 (1983) ("the
        appropriate vehicle for presenting a claim of ineffective assistance of counsel is

24      through post-conviction relief" (internal quotation marks omitted)), the district court
        reached the correct result.  *See* [*Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341

25      (1970)].  Because the State offered sufficient race-neutral justifications for striking
        each juror, appellant failed to demonstrate that he was prejudiced by counsel's failure

26      to present further legal argument.  *See Foster v. State*, 121 Nev. 165, 172, 111 P.3d

1083, 1088 (2005).  We conclude that the district court did not err by denying this claim.

Order of Affirmance, Exhibit 58, p. 4.

Aviles-Perez's claim concerns the State's peremptory challenges of prospective jurors Dimalanta, Hall, Rodriguez, and Bucktooth-Dubois, whom Aviles-Perez describes as "minority-jurors."  *See* First Amended Petition, p. 14.

In *Batson v. Kentucky*, 476 U.S. 79, 86 (1986), the Supreme Court held that the Equal Protection Clause precludes the prosecution in a state-court criminal jury trial from excluding prospective jurors on the basis of race.  A trial court faced with a *Batson* challenge undertakes a three-step analysis to determine whether the prosecution has improperly excluded members from the jury on the basis of race.  *Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008).  First, the defendant must make out a *prima facie* case showing that a peremptory challenge has been exercised on the basis of race.  *Id*. at 476.  Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question.  *Id*. at 476-77.  Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful racial discrimination.  *Id*. at 477.  "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  *Purkett v. Elem*, 514 U.S. 765, 768 (1995); *see generally Gonzalez v. Brown*, 585 F.3d 1202, 1206-09 (9th Cir.2009); *Paulino v. Harrison*, 542 F.3d 692, 699-703 (9th Cir.2008) (discussing *Batson* analysis).

Aviles-Perez explains this ineffective assistance of counsel claim as follows:

> During voir dire the district attorney used four of her first five peremptory challenges to dismiss minority jurors.  Trial counsel thereafter lodged a claim pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986).  The state responded with several purportedly race-neutral reasons for dismissing each one: panelist Dimalanta because he said he was going to be foreclosed upon and needed to call his work periodically to pick up shifts; panelist Hall, Rodriguez, and Bucktooth-Dubois because of their relationship to someone accused and/or convicted of a crime.  (Ex. 10 at 183-186.)  In particular, Panelist Bucktooth-Dubois's father had been accused of molesting his grandson. (Ex. 10 at 119.)

> The state declined, however, to dismiss numerous non-minority panelists with similar issues.  Panelists Green, Lam, and Baca had issues with childcare and the

10

1   disruption to their work and finances that jury service would pose. (Ex. 10 at 31, 37,
2   40, 45.) Panelist Cave, similarly to panelist Bucktooth-Dubois, had a father who had
    been accused of sexually molesting his child, but was not dismissed. (Ex. 10 at 42,
3   43.) Panelist Lam stated that her stepsister had accused the stepsister's brother of
    sexual assault, Panelist Bestor's ex-husband had been accused of molesting her
    daughters, and Panelist Ballesteros' cousins had accused their father of sexual assault.
4   (Ex. 10 at 44, 45, 46.) The state did not seek to dismiss any of these jurors via
5   peremptory challenge.

6           Although trial counsel properly lodged the initial *Batson* claim, he failed to
    make any of the above factual or legal arguments in support of the claim. When
7   asked by the court if he wished to make any argument before the court ruled, trial
    counsel stated that he did not. (Ex. 10 at 188.) This was below the objective
8   reasonable standard required of trial counsel pursuant to *Strickland*. Defense counsel
    had the burden of making a *prima facie* case of discrimination and failed to support
    his *Batson* challenge with citation to law or fact.

9

10  First Amended Petition, pp. 14-15.

11          With respect to prospective juror Dimalanta, the trial court observed that Dimalanta, who

12  was from Hawaii, appeared to be Asian, possibly of Filipino ancestry. *See* Transcript of Jury Trial,

13  July 20, 2009, p. 183. Dimalanta was evidently the only prospective juror of Filipino, or Asian,

14  ancestry challenged by the prosecution using a peremptory challenge. Aviles-Perez is not of

15  Filipino, or Asian, ancestry; he acknowledged that he is "Caucasian by race and Latino or Hispanic

16  by ethnicity." *Id*. at 182-83. After Aviles-Perez's counsel objected, pursuant to *Batson*, to the

17  peremptory challenge of Dimalanta, the following exchange occurred:

18          Ms. Kollins [prosecutor]: Well, since we've been in here today, he
    [Dimalanta] has voiced his opinion several times about work, and how he's going to
19  be foreclosed upon. How he wants relief from the Court every two hours to go call to
    see if he can pick up a banquet shift. I don't think he's committed to listening to the
20  evidence in this trial. It has nothing to do with whether he is from Hawaii or Nova
    Scotia.
21
            As to Ms. Hall --
22
            The Court: He said he will try to focus, but he didn't commit 100 percent to.
23
            Ms. Kollins: Well, he -- right. And, I mean, you know, Mr. Maningo stressed
24  over and over in his voir dire how important of a case this was and how they were
    lifelong consequences. So if he's just going to try to listen, then maybe we need
25  somebody who wants to be here and is not thinking about their beyond the courtroom
    work activities.
26

11

1   *Id*. at 183-84.  The prosecutor stated a  race-neutral basis for striking prospective juror Dimalanta.

2   Aviles-Perez's arguments -- the arguments he now claims his trial counsel should have made --

3   regarding the fact that the prosecution did not challenge prospective jurors Green, Lam, and Baca,

4   despite the difficulties they had with respect to childcare and work, does not establish that the

5   peremptory challenge of prospective juror Dimalanta was racially discriminatory; those prospective

6   jurors' difficulties with respect to their work and childcare were nowhere near the same as

7   Dimalanta's concerns, and there is no indication that they were as distracted and disinterested in the

8   trial as Dimalanta.

9        Prospective juror Hall was evidently African American.  *See id*. at 184.  It appears she was

10   the only African American prospective juror excluded by the prosecution using a peremptory

11   challenge.  Aviles-Perez is not African American.  As to her peremptory challenge of prospective

12   juror Hall, the prosecutor stated her motivation as follows:

13        Ms. Kollins: ....

14        As to Ms. Hall, you know, her mom was convicted of murder.  That's
      frightening to me when I have somebody who's -- has a family member that's

15   incarcerated on a very serious offense.  She said that her mom was a victim of
      domestic violence for a long time and ultimately snapped.  Obviously, she still was

16   incarcerated.  I mean, those are just a lot of very deep emotions that I generally don't
      -- I don't care what color she is.  I mean --

17        The Court: She's black.

18        Ms. Kollins:  Right.  But that has nothing -- I'm giving you the reason why I

19   exercised a peremptory challenge.  I mean, yes, she's obviously --

20        The Court:  She's not of his race nor of his ethnicity.

21        Ms. Kollins:  No.  No.  That is correct.

22   *Id*.  The prosecutor stated a strong race-neutral basis for her peremptory challenge of prospective

23   juror Hall.  Aviles-Perez argues that the prosecutor's failure to challenge other prospective jurors

24   who had relatives who were victims of sexual assault, and who had relatives accused of sexual

25   assault, shows the State's explanation of the peremptory challenge to be a pretext.  Reply, p. 12.

26   However, there was no indication that, in those other cases, anyone was convicted or sentenced to

prison time, and there is no indication that the prosecutor had any reason to be concerned that those other prospective jurors might harbor animosity toward the criminal justice system and the district attorney's office, as there was with respect to Hall.  With respect to prospective juror Hall, the considerations for the prosecutor were significantly different from those regarding the other prospective jurors.

It appears from the record that prospective juror Bucktooth-Dubois grew up on an Indian reservation, and may or may not have been Native American. *See* Transcript of Jury Trial, July 20, 2009, p. 185.  She evidently would have been the only Native American prospective juror challenged by the prosecution using a peremptory challenge.  Aviles-Perez is not Native American. With respect to the peremptory challenge of prospective juror Bucktooth-Dubois, the following exchange took place:

Ms. Kollins: ....

Ms. Bucktooth-Dubois, although she has an Indian last name, appears to be Caucasian.  Her dad was accused of sexual assault.  Now, you know, I didn't tell --

The Court:  She did say that she grew up on the Allegheny Reservation.

Ms. Kollins:  Correct.  But she still appears Caucasian.  She does not appear American Indian.  It doesn't matter where she grew up.  You know, she appears Caucasian.  The reason I removed her from the panel --

The Court:  She's neither -- neither male nor --

Ms. Kollins:  Nor Hispanic.

The Court:  -- Latino.

\*   \*   \*

The Court:  Oh. Ms. Bucktooth, you said the reason why I excused her from the panel was?

Ms. Kollins:  Was because her father was accused of sexual assault, and the victim was a family member.  We've pretty much excused for cause everyone in here that's been a victim, or victim related.  She's more offender-related to me.  I think that is just as dangerous from the State's perspective.  If she has a close relationship with her father, there could be some bad feelings there.  There could be reasons to look at the evidence in here with the same skepticism she looked at the evidence from the grandchild that was the reported victim.  I think that's absolutely an appropriate exercise of a preempt.

1   *Id*. at 185-86.  The prosecutor stated a race-neutral reason for the peremptory challenge of

2   prospective juror Bucktooth-Dubois.  As with prospective juror Hall, the prosecutor had reason to be

3   concerned that Bucktooth-Dubois might harbor animosity toward the criminal justice system because

4   of the accusations that her father committed sexual assault; as the prosecutor stated, there was a

5   worry that she was "offender-related."  The court finds no merit in Aviles-Perez's argument that trial

6   counsel could have shown that motivation to be a pretext because there were other prospective

7   jurors, not challenged by the prosecution, who had relatives accused of sexual assault; the

8   circumstances regarding those other prospective jurors were different -- there appears to be no reason

9   to believe they felt their relatives accused of sexual assault were mistreated by the criminal justice

10  system -- and did not present the same concerns for the prosecution.

11          Finally, the last of the four peremptory challenges at issue was the challenge of prospective

12  juror Rodriguez, an Hispanic woman.  With respect to prospective juror Rodriguez, the prosecutor

13  stated:

14          As to Carmen Rodriguez, she is a Hispanic female.  Obviously, she speaks
        Spanish. That has nothing to do with my preempting her.  She has a brother that was
15      incarcerated for burglary since 1986.  It is 2009.  Everyone that is in here that
        practices criminal law knows that you can't be in prison for 25 years for a simple
16      burglary in Nevada.  Even if it were enhanced with a weapon at some point, it's still
        far beyond the incarceration he should be doing.  She said she felt he was unfairly
17      treated by the system.

18          You know, I can't leave somebody on a panel with any animosity towards the
        District Attorney's Office.
19

20  *Id*. at 186; *see also id*. at 131 (prospective juror Rodriguez responding "[n]ot really," when asked

21  whether her brother was treated fairly by the criminal justice system).  This was plainly a race-

22  neutral reason for the prosecutor's peremptory challenge of Rodriguez.  Here again, the prosecutor

23  was legitimately concerned that Rodriguez harbored animosity toward the criminal justice system.

24  Aviles-Perez does not articulate any argument that his trial counsel could have made to show the

25  prosecutor's race-neutral motivation for this peremptory challenge to be a pretext.

26

14

1    In short, there is no showing that Aviles-Perez's trial counsel's handling of the *Batson*

2  challenges was deficient, or that he was prejudiced.

3    In Ground 1F, Aviles-Perez claims that his federal constitutional right to effective assistance

4  of trial counsel was violated because "trial counsel improperly waived petitioner's right to a

5  preliminary hearing and speedy trial."  First Amended Petition, p. 15.

6    The Nevada Supreme Court denied this claim on its merits, as follows, on the appeal from

7  the denial of Aviles-Perez's state habeas petition:

8         First, appellant claims that the district court erred by denying his claims that
          counsel was ineffective for waiving his preliminary hearing and right to a speedy trial.
9         The district court determined that these claims were belied by the record because
          appellant personally waived his rights.  To the extent that appellant argues that
10        counsel was ineffective for advising him to do so, appellant failed to demonstrate that
          the State would have been unable to present slight or marginal evidence against him,
11        *Sheriff v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980), or that valuable
          witnesses or evidence were lost as a result of the waiver of the right to a speedy trial,
12        *State v. Fain*, 105 Nev. 567, 569, 779 P.2d 965, 966 (1989).  We conclude that the
          district court did not err by denying these claims.  *See Wyatt v. State*, 86 Nev. 294,
13        298, 468 P.2d 338, 341 (1970) (noting that we will affirm a decision of the district
          court if it reaches the right result, even if for the wrong reason).

14

15  Order of Affirmance, Exhibit 58, pp. 1-2.

16    Aviles-Perez appears to allege that he did not personally waive his right to a preliminary

17  hearing and his speedy trial rights.  *See* First Amended Petition, p. 16 ("... Mr. Aviles-Perez did not

18  explicitly or personally waive those rights."); Reply, p. 14 ("Moreover, Aviles-Perez asserts that he

19  never intended to personally waive or acknowledge the waiver of his rights.").  But that allegation

20  is belied by the record.  *See* Transcript of Waiver of Preliminary Hearing, November 3, 2008,

21  Exhibit 4; Transcript of Proceedings, November 21, 2008, Exhibit 7).

22    Nevertheless, Aviles-Perez claims that his trial counsel was ineffective, in that they did not

23  properly advise him regarding his right to a preliminary hearing or his speedy trial rights.  *See* First

24  Amended Petition, pp. 15-16; Reply, pp. 13-14.  However, Aviles-Perez makes no specific

25  allegation, and proffers no evidence, regarding what aspects of those rights he did not understand, or

26  how his attorneys' advice regarding them was insufficient.

1    Moreover, Aviles-Perez does not make any substantial allegation, and proffers no evidence,

2   regarding how he was prejudiced by the waiver of his preliminary hearing or the waiver of his

3   speedy trial rights.  In this regard, Aviles-Perez argues, in his first amended habeas petition:

4         ... [H]e has been utterly prejudiced as a result of the delay, as there was significant
        time for memory loss and for witnesses to scatter.  None of the time was apparently
5         used by defense counsel to prepare any more thoroughly for trial, although the state
        had significantly more time to investigate its case and prepare its witnesses.
6

7   First Amended Petition, p. 16.  And, in his reply, he argues:

8         Aviles-Perez was prejudiced by counsel's deficient performance, as he was
        deprived of multiple constitutional rights without his understanding.  Had those rights
9         been properly enforced, it is likely that the outcome of the trial would have been
        different.  There was insufficient evidence to sustain the charges against Aviles-Perez.
10        Had his case been timely litigated and had he been provided with a preliminary
        hearing, the state would likely have been unable to provide sufficient evidence to
11        sustain all of the charges against him.

12   Reply, p. 14.  Aviles-Perez's argument in this regard is without substance.  Aviles-Perez does not

13   make any allegation, or proffer any evidence to show how memory loss affected his defense, what

14   witnesses became unavailable, or why the prosecution would have been unable to prove him guilty

15   had the trial been held earlier.

16        In Ground 1G, Aviles-Perez claims that his federal constitutional right to effective assistance

17   of trial counsel was violated because "trial counsel failed to properly object throughout trial."  First

18   Amended Petition, p. 16.  Specifically, he claims that his trial counsel failed to object when the

19   prosecutor asked leading questions of K.A. and when witness Sandra Leon testified regarding

20   alleged hearsay statements of K.A.  *See id*. at 16-17.

21        The Nevada Supreme Court denied this claim on its merits, as follows, on the appeal from

22   the denial of Aviles-Perez's state habeas petition:

23         Second, appellant claims that the district court erred by denying his claims
        that counsel was ineffective for failing to object at trial to:  (1) leading questions
24         during the victim's testimony, (2) prejudicial statements made by the prosecutor,
        (3) hearsay testimony, and (4) speculative testimony.  The district court determined
25         that counsel was not deficient because the objections he argued counsel should have
        lodged would have either been futile, *Ennis v. State*, 122 Nev. 694, 706, 137 P.3d
26         1095, 1103 (2006), or fell under the purview of counsel's tactical decisions, *see*
        *Rhyne v. State*, 118 Nev. 1, 8, 38 P.3d 163, 167-68 (2002); *see also Harrington v.*

16

1

2

3

4

> *Richter*, 562 U.S. _, _, 131 S. Ct. 770, 790 (2011) ("There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003))). Appellant also failed to show a reasonable probability that the verdict would have been different had counsel objected as suggested.  We conclude that the district court did not err in denying these claims.  *See Ennis*, 122 Nev. at 705, 137 P.3d at 1102.

5   Order of Affirmance, Exhibit 58, pp. 1-2.

6          The Nevada Supreme Court's rulings that the objections Aviles-Perez claims his trial counsel

7   should have made would have been futile, and that Aviles-Perez did not show a reasonable

8   probability that the verdict would have been different had counsel objected as suggested, turn on the

9   Nevada Supreme Court's application of state evidence law, and are, therefore, especially

10  authoritative.  Those rulings were not objectively unreasonable.

11         The state courts' denial of the claims asserted by Aviles-Perez in Ground 1 of his first

12  amended habeas petition was not contrary to, or an unreasonable application of, clearly established

13  federal law, as determined by the Supreme Court of the United States, and the state courts' rulings in

14  this regard were not based on an unreasonable determination of the facts in light of the evidence

15  presented.  *See* 28 U.S.C. § 2254(d).  Aviles-Perez does not show habeas corpus relief to be

16  warranted.  The court will deny habeas corpus relief with respect to his claims in Ground 1.

17         <u>Ground 2</u>

18         In Ground 2, Aviles-Perez claims that his federal constitutional rights were violated because

19  "the State used its peremptory challenges to strike minority jurors."  First Amended Petition, p. 18.

20         The Nevada Supreme Court ruled on this claim, on Aviles-Perez's direct appeal, as follows:

21         Aviles-Perez contends, pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), that the district court erred in denying his challenge to the State's dismissal of

22         potential juror nos. 114, 126, 195, and 124.  He argues that the State removed these jurors solely on the basis of race, in violation of the Fourteenth Amendment's Equal

23         Protection Clause.

24         [Footnote: In support of his argument, Aviles-Perez alleges that there were seven non-minority panelists who were similarly situated to the minority panelists;

25         however, the State only sought to remove the minority prospective jurors.  The fundamental premise of this assertion, however, is flawed, given that five of the

26         alleged non-minority panelists were excused for cause before the State had an

17

1    opportunity to exercise a peremptory challenge as to them.  We therefore conclude
     that this claim is without merit.]

2

3        "'[T]he trial court's decision on the ultimate question of discriminatory intent
     represents a finding of fact of the sort accorded great deference on appeal.'" *Walker
     v. State*, 113 Nev. 853, 867-68, 944 P.2d 762, 771-72 (1997) (quoting *Hernandez v.
     New York*, 500 U.S. 352, 364 (1991)).

4

5        Although the State ordinarily is entitled to exercise permitted peremptory
     challenges for any reason, the Equal Protection Clause forbids eliminating potential

6    jurors based solely on their race.  *Batson*, 476 U.S. at 89.  When a defendant raises a
     *Batson* challenge, a three-step analysis applies:  "(1) the [defendant] must make out a

7    prima facie case of discrimination, (2) the production burden then shifts to the [State]
     to assert a neutral explanation for the challenge, and (3) the trial court must then

8    decide whether the [defendant] has proved purposeful discrimination."  *Ford v. State*,
     122 Nev. 398, 403, 132 P.3d 574, 577 (2006).  The first step is rendered moot,

9    however, where the State gives reasons "for its peremptory challenges before the
     district court determine[s] whether the [defendant] made a prima facie showing of

10   discrimination."  *Id*.  "[T]he State's neutral reasons for its peremptory challenges need
     not be persuasive or even plausible."  *Id*. at 403, 132 P.3d at 577-78.  "Where a

11   discriminatory intent is not inherent in the State's explanation, the reason offered
     should be deemed neutral."  *Id*. at 403, 132 P.3d at 578.

12

13       The State offered race-neutral explanations for its peremptory challenges and
     explained that it challenged potential juror no. 114 because he expressed a need to

14   check work shift availability every two hours.  The State asserted that this tended to
     indicate that potential juror no. 114 was not committed to listening to the evidence.

15   Potential juror no. 126 stated that her mother had been convicted of murder.  She
     indicated that her mother "was a victim of domestic violence for a long time and

16   ultimately snapped."  The State asserted that potential juror no. 126 would not be able
     to remain impartial due to the underlying emotions related to her mother's experience.

17   Potential juror no. 195's father was accused of sexual assault by a juvenile victim.
     She indicated that she "believe[d her] dad," over the juvenile's accusations, which the

18   State asserted would render her partial and unduly skeptical of K.A.  Potential juror
     no. 124 expressed sympathy for her brother, who had been convicted of serious

19   criminal offenses, and stated that he was unfairly treated by the system.  Based on
     these responses, the State asserted that potential juror no. 124 harbored animosity

20   towards the State and would not be an impartial juror.  None of these reasons indicate
     an intent to discriminate and therefore each was sufficient to meet the State's burden

21   under step two of the *Batson* framework.  Moreover, other than raising the objection,
     Aviles-Perez did not make an affirmative attempt to prove purposeful discrimination.

22   We conclude that the district court did not abuse its discretion when it found that
     Aviles-Perez had failed to prove purposeful discrimination and denied his *Batson*
     challenge.

23

24   Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30, pp. 3-5.

25       This court finds the Nevada Supreme Court's ruling to be objectively reasonable.  The

26   prosecutor stated race-neutral explanations for the subject peremptory challenges.  Aviles-Perez's

                                            18

1   attempts to show those explanations to be pretexts were unavailing.  The non-minority prospective

2   jurors not excluded by the prosecution were not so similarly situated to those excluded by the

3   prosecution as to show pretext.  *See* discussion, *supra*, regarding Ground 1E.

4        The state courts' denial of the claim asserted by Aviles-Perez as Ground 2 of his first

5   amended habeas petition was not contrary to, or an unreasonable application of, clearly established

6   federal law, as determined by the Supreme Court of the United States, and the state courts' ruling

7   was not based on an unreasonable determination of the facts in light of the evidence presented.  *See*

8   28 U.S.C. § 2254(d).  Aviles-Perez does not show habeas corpus relief to be warranted.  The court

9   will deny habeas corpus relief with respect to this claim.

10       Ground 3

11       In Ground 3, Aviles-Perez claims that his federal constitutional rights were violated as a

12   result of prosecutorial misconduct.  First Amended Petition, pp. 19-23.  Ground 3 has six subparts,

13   designated Grounds 3A, 3B, 3C, 3D, 3E, and 3F.

14       "Review for prosecutorial misconduct claims on a writ of habeas corpus is 'the narrow one of

15   due process, and not the broad exercise of supervisory power.'"  *Jones v. Ryan*, 691 F.3d 1093, 1102

16   (9th Cir. 2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  For a federal habeas

17   petitioner to qualify for relief on a claim of prosecutorial misconduct, "it is not enough that the

18   prosecutors' remarks were undesirable or even universally condemned;" rather, the petitioner must

19   show that the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting

20   conviction a denial of due process."  *Darden*, 477 U.S. at 181 (internal quotation marks omitted).

21   In *Darden*, the Supreme Court "measured the fairness of the petitioner's trial by considering, *inter*

22   *alia*, (1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether

23   the trial court gave a curative instruction; and (3) the weight of the evidence against the accused."

24   *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005) (citing *Darden*, 477 U.S. at 181-82).  Where a

25   curative instruction is given, jurors are presumed to "follow the instruction absent extraordinary

26   situations."  *Id*. (citing *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)).

1    In Ground 3A, Aviles-Perez claims that "the prosecutor improperly shifted the burden of

2  proof to the defense."  First Amended Petition, p. 19.  Aviles-Perez bases this argument on the

3  following statements of the prosecutor in the State's rebuttal closing argument:

4    Defense counsel, other than saying some type of teenage hysteria, will not
    address this kid's motivations because they can't ... we're just calling her -- she's a
5    liar but we still can't say why other than teenage hysteria.  That's just -- that does not
    comply with a logical application of your common sense.

6

7  *Id.*; *see also* Transcript of Jury Trial, July 23, 2009 (Exhibit 15), p. 47.

8    The Nevada Supreme Court ruled as follows on this claim on Aviles-Perez's direct appeal:

9    Aviles-Perez asserts that the State committed prosecutorial misconduct when
    it improperly shifted the burden of proof during its closing argument.

10

11    "It is a fundamental principle of criminal law that the State has the burden of
    proving the defendant guilty beyond a reasonable doubt and that the defendant is not
    obligated to take the stand or produce any evidence whatsoever."  *Barron v. State*,
12    105 Nev. 767, 778, 783 P.2d 444, 451 (1989).  In general, "[t]he tactic of stating that
    the defendant can produce certain evidence or testify on his or her own behalf is an
13    attempt to shift the burden of proof and is improper."  *Id*.

14    During closing argument, Aviles-Perez discussed K.A.'s disclosure of the
    sexual abuse as having occurred during a period that "has often been referred to as
15    everyone's sort of temporary insanity which is the beginning of your teenage years."
    On rebuttal, the State sought to negate that assertion by arguing that K.A. had no
16    motivation or reason to fabricate the abuse accusations.  The State's comment cannot
    be read as implying that Aviles-Perez had a burden to produce evidence or a witness
17    demonstrating K.A.'s motive and that he had failed to do so.  It was a rebuttal,
    nothing more.  The State's remarks were not improper, and therefore, the district
18    court did not err when it overruled Aviles-Perez's objection.

19  Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30, pp. 5-6

20    This court agrees with the ruling of the Nevada Supreme Court.  The court does not

21  understand the subject comments, made by the prosecutor in her rebuttal closing argument, to have

22  been in the nature of an improper shifting of the burden of proof; rather, the comments were a fair

23  response to defense counsel's attack on K.A.'s credibility.

24    In Ground 3B, Aviles-Perez claims that "the prosecutor argued facts not in evidence."  First

25  Amended Petition, p. 20.  Aviles-Perez bases this argument on the following statement of the

26  prosecutor in the State's rebuttal closing argument:

20

1
2

       There were some questions, some graphic questions by the jury.  You know, Mr. Maningo calls him an adult male.  He's not of huge stature.  Not every time a penis goes in an anal opening is there injury.  You do not know how erect he was.  You do not know the size of his genitalia.  There are a lot of things you don't know.  You can place a penis in an anal opening without tearing.

3

4

*Id.*; *see also* Transcript of Jury Trial, July 23, 2009, Exhibit 15, p. 46.

5

       The Nevada Supreme Court denied this claim, ruling as follows:

6
7
8
9
10
11
12

       Aviles-Perez argues that the State committed prosecutorial misconduct during its closing argument when it argued facts not in evidence by stating that, in general, the insertion of a male organ into the anus of another would not cause injury.  The State's comment was improper; no such facts were in evidence.  *See Rose v. State*, 123 Nev. 194, 209, 163 P.3d 408, 418 (2007) ("It is improper for the State to refer to facts not in evidence.").  Nonetheless, Aviles-Perez objected to this statement, and the objection was sustained.  As such, Aviles-Perez suffered no prejudice because the jury was instructed to "disregard any evidence to which an objection was sustained by the court."  *See* [*Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008)] (preserved errors are reviewed for harmless error); *Summers v. State*, 122 Nev. 1326, 1333, 148 P.3d 778, 783 (2006) (the jury is presumed to follow the district court's orders and instructions).

13

Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30, p. 6.

14

       The argument here at issue, made by the prosecutor in her rebuttal closing argument, was in

15

response to the following argument made by defense counsel in his closing argument:

16
17

       Another nonsensical part of [K.A.'s] testimony was actually brought up by some very, very intuitive jury questions that were asked during her testimony.  There was two questions.

18
19

       When you say that your dad put his dick in your butt, was there any blood?  We're talking about an adult male and a 10-year-old child, forcible anal penetration.  And the question from the jury was was there any blood, and she says no.

20
21

       And then even better, though, the question -- the next question was was there any pain when that happened.  And what was [K.A.'s] answer?  I don't know.  I don't know.

22
23
24

       Now, this is a girl who can recall four years ago that someone was wearing shorts, you know, but not a shirt.  She can recall who was sleeping in the bed.  She can recall, you know, what time frame these happened.  But she can't remember if there was pain for anal penetration?  Or is it that she doesn't know what to say or how to answer because it didn't happen.

25

Transcript of Jury Trial, July 23, 2009, Exhibit 15, p. 28.  The prosecutor's argument that is the

26

subject of this claim was a fair response to this argument by defense counsel, which itself was

1  not based on any evidence that the alleged anal intercourse would necessarily have caused injury or

2  pain.

3        At any rate, the court agrees with the conclusion of the Nevada Supreme Court that Aviles-

4  Perez was not prejudiced.  As Aviles-Perez recognizes (*see* First Amended Petition, p. 20), he was

5  not convicted of any charges stemming from the alleged anal penetration.  Furthermore, defense

6  counsel objected to the argument, and the objection was sustained.  *See* Transcript of Jury Trial, July

7  23, 2009, Exhibit 15, p. 46.  The jury was instructed to "disregard any evidence to which an

8  objection was sustained by the court."  *See* Instructions to the Jury, Exhibit 16, Instruction No. 8.

9        In Ground 3C, Aviles-Perez claims that "the prosecutor improperly disparaged defense

10  counsel and defense arguments during closing."  First Amended Petition, p. 21.

11        Aviles-Perez bases this argument, first, on the following statement of the prosecutor, in the

12  State's rebuttal closing argument, in response to an analogy used by defense counsel in closing

13  argument:  "It's been awhile since I heard the cockroach in the spaghetti."  *See* Transcript of Jury

14  Trial, July 23, 2009, Exhibit 15, p. 41; *see also id*. at 39 (defense argument).

15        The Nevada Supreme Court ruled as follows on this claim:

16        Although the comment seems to imply that the defense's analogy was old or not frequently used, it did not personally disparage counsel or his argument.  Notably,

17        Aviles-Perez's objection was sustained; therefore any resulting misconduct was neutralized.  *See Valdez*, 124 Nev. at 1188, 196 P.3d at 476; *Summers*, 122 Nev. at

18        1333, 148 P.3d at 783.

19  Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30, p. 7.

20        This court agrees.  Aviles-Perez was not prejudiced by the prosecutor's comment regarding

21  defense counsel's cockroach-in-the-spaghetti analogy.

22        Nor was Aviles-Perez prejudiced by the other comment of the prosecutor challenged in

23  Ground 3C.  *See* First Amended Petition, p. 21, lines 12-19.  That comment concerned an argument

24  made by the defense; it was not improper denigration of Aviles-Perez or his counsel.

25

26

In Ground 3D, Aviles-Perez claims that "the prosecutor improperly inserted her personal opinion regarding the merits of the State's case." First Amended Petition, p. 21. Aviles-Perez here focuses on the following comments made by the prosecutor in the State's rebuttal closing argument:

.... I wish I could answer every single question you have, but that is not my responsibility nor is that my job. My responsibility is towards the material elements of the crimes charged.

Now, Mr. Maningo [defense counsel] says I charged counts in the alternative because I don't know what's going on. I submit to you charges are in the alternative all the time in many of these cases. It's not because we don't know. It's because it's your decision to decide whether what happened amounts to penetration. I can offer you evidence, but if you think there's less than penetration there's still a lewd act. So it's not because we don't know. It's because it's your job to decide.

\* \* \*

I wish there were DNA in this case.

\* \* \*

I didn't call the mother of P because I did not give notice of her. I'm required to notice witnesses. We had no contact with her. We did not know what she knew. It is inappropriate for me to ambush if you will the witness. That's not allowed under the rules. I did not give notice of her. I did not know what she knew and that's why she wasn't called as a witness.

\* \* \*

I can't right these cases. I can give you what I have and point to you for the reasons to make the right decision. Mr. Maningo urges you that the right decision is a walk.

Transcript of Jury Trial, July 23, 2009, Exhibit 15, pp. 41-42, 44, 50.

This court finds objectively reasonable the Nevada Supreme Court's denial of Aviles-Perez's claims with regard to these comments of the prosecutor. For the most part, these comments were fair responses to arguments made by defense counsel. Any improper vouching by the prosecutor in these comments was *de minimus*. Aviles-Perez was not unfairly prejudiced.

In Ground 3E, Aviles-Perez claims that "the prosecutor improperly stated that K.A. was in need of justice and common sense." First Amended Petition, p. 22. Aviles-Perez here complains of the following comment by the prosecutor in her rebuttal closing argument:

23

1
2

> [K.A.] does not need your sympathy nor would I request you to apply sympathy in this case.  She needs some justice.  That's all she needs.  And she needs you to apply your common sense.

3  Transcript of Jury Trial, July 23, 2009, Exhibit 15, p. 42.  That comment was not improper, and

4  certainly was not such as to render Aviles-Perez's trial unfair.  Aviles-Perez argues that it was an

5  appeal to the jury's sympathies (First Amended Petition, p. 22), but, in fact, the prosecutor

6  specifically said K.A. did not need the jury's sympathy, and she told the jury that she did not request

7  them to "apply sympathy in this case."  The Nevada Supreme Court reasonably denied this claim.

8  In Ground 3F, Aviles-Perez claims that "the prosecutor minimized the reasonable doubt

9  standard by arguing that the State frequently met that evidentiary burden."  First Amended Petition,

10  p. 22.  Aviles-Perez here complains about the following comment made by the prosecutor in her

11  rebuttal closing argument:

12
13

> Reasonable doubt is a standard that is used in every criminal case in every criminal courtroom across the United States.  It's used to secure convictions all the time.

14  Transcript of Jury Trial, July 23, 2009, Exhibit 15, p. 41.  This was in response to the following

15  argument, made by defense counsel in his closing argument:

16
17

> Everything in this case must be proven by the prosecution.  And not only must they prove it, but they must prove it beyond a reasonable doubt.  That is the highest standard of proof recognized by our system of law.

18  *Id*. at 35.  The Nevada Supreme Court denied Aviles-Perez's claim of prosecutorial misconduct, as

19  follows:

20
21
22
23

> Aviles-Perez asserts that the State committed prosecutorial misconduct when it minimized the reasonable doubt standard by stating that "[r]easonable doubt is a standard that is used in every criminal case in every criminal courtroom across the United States.  It's used to secure convictions all the time."  Broadly speaking, it is improper for either party to "quantify, supplement, or clarify the statutorily prescribed standard for reasonable doubt."  *Evans v. State*, 117 Nev. 609, 631, 28 P.3d 498, 514 (2001).

24
25
26

> During closing argument, Aviles-Perez commented that the State had the burden to prove its case beyond a reasonable doubt and noted "[t]hat [it] is the highest standard of proof recognized by our system of law."  In response, the State remarked that the reasonable doubt standard is "used to secure convictions all the time."  The State's comment was aimed at informing the jury that, although it is a high standard of proof, it is an attainable one.  Whether one characterizes the State's argument as

24

1   minimizing the reasonable doubt standard, as Aviles-Perez does, or as explaining that
    the standard is attainable, as the State does, one thing is clear:  the State did not
2   "quantify, supplement, or clarify" the reasonable doubt standard as prohibited by our
    decisions.  *Evans*, 117 Nev. at 631, 28 P.3d at 514.  As a result, we conclude that the
3   remark was proper.

4   Transcript of Jury Trial, July 23, 2009, Exhibit 15, pp. 7-8.  The court agrees with the Nevada

5   Supreme Court that this comment was not improper, and finds that, at any rate, it did not render

6   Aviles-Perez's trial unfair.

7        The comments of the prosecutor complained of by Aviles-Perez in Ground 3, whether taken

8   singly or cumulatively, did not infect his trial with unfairness, so as to make the resulting conviction

9   a denial of due process.  The state courts' denial of the claims asserted by Aviles-Perez in Ground 3

10  of his first amended habeas petition was not contrary to, or an unreasonable application of, clearly

11  established federal law, as determined by the Supreme Court of the United States, and the state

12  courts' rulings in this regard were not based on an unreasonable determination of the facts in light of

13  the evidence presented.  *See* 28 U.S.C. § 2254(d).  Aviles-Perez does not show habeas corpus relief

14  to be warranted.  The court will deny habeas corpus relief with respect to his claims in Ground 3.

15       Ground 4

16       In Ground 4, Aviles-Perez claims that his federal constitutional rights were violated "when

17  the trial court failed to properly instruct the jury on the law."  First Amended Petition, 23.  Ground 4

18  has three subparts, designated Grounds 4A, 4B and 4C.

19       To show that habeas corpus relief is warranted based on an error in instructing the jury, a

20  habeas petitioner must show that the "'instruction by itself so infected the entire trial that the

21  resulting conviction violates due process.'"  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp*

22  *v. Naughten*, 414 U.S. 141, 147 (1973)).  If a federal court determines, in a habeas action, that the

23  trial court erred in instructing the jury, it must also determine whether the error prejudiced the

24  petitioner.  *See Henderson v. Kibbe*, 431 U.S. 145, 153-54 (1977).  In determining whether the

25  petitioner was prejudiced, a challenged jury instruction is to be considered "in the context of the

26  instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147).

25

1    In Ground 4A, Aviles-Perez claims that "use of the word 'victim' in the district court's jury

2  instructions violated petitioner's federal right to due process."  First Amended Petition, p. 23.

3  Aviles-Perez complains, in this regard, about the following jury instructions, Jury Instructions

4  Number 16 and 17:

5        There is no requirement that the testimony of a victim of sexual assault be
       corroborated, and her testimony standing alone, if believed beyond a reasonable
6        doubt, is sufficient to sustain a verdict of guilty.

7  and

8        Where a child has been the victim of sexual assault or lewdness with a minor and
       does not remember the exact date of the act, the State is not required to prove a
9        specific date, but may prove a time frame within which the act too place.

10  *See* First Amended Petition, p. 23; *see also* Instructions to the Jury, Exhibit 16, Instructions No. 16

11  and 17.

12    The Nevada Supreme Court denied this claim, finding that the instructions were proper.  *See*

13  Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30, p. 10 n.4.

14    This court finds the Nevada Supreme Court's ruling to be objectively reasonable.  There is no

15  showing that these jury instructions violated Aviles-Perez's federal constitutional right to due

16  process of law.  Aviles-Perez has cited no United States Supreme Court precedent supporting such a

17  claim.

18    In Ground 4B, Aviles-Perez makes a further claim regarding Instruction Number 16 (quoted

19  above); he claims that "use of the 'no corroboration' instruction improperly focused the jury's

20  attention on K.A.'s testimony above all other witnesses."  First Amended Petition, p. 24.

21    The Nevada Supreme Court denied this claim, ruling as follows:

22        Aviles-Perez asserts that the district court erred in giving Jury Instruction No.
       16 because it unfairly focused the jury's attention on and highlighted a single
23        witness's testimony.

24        We review a district court's decision as to jury instructions for an abuse of
       discretion or judicial error.  *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585
25        (2005).

26        Jury Instruction No. 16 provided that "[t]here is no requirement that the
       testimony of a victim of sexual assault be corroborated, and her testimony standing

1    alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of
     guilty." As Aviles-Perez acknowledges in his briefs, in *Gaxiola v. State*, 121 Nev.
2    638, 649-50, 119 P.3d 1225, 1233 (2005), we upheld a nearly identical instruction as
     a correct statement of the law and concluded that "the instruction does not unduly
3    focus the jury's attention on the victim's testimony." We therefore conclude that the
     district court did not abuse its discretion in providing Jury Instruction No. 16.

4

5    Exhibit 30 at 10-11 (footnotes omitted). Aviles-Perez does not cite any United States Supreme

6    Court precedent holding such a jury instruction to violate the federal constitution.

7        In Ground 4C, Aviles-Perez claims that "use of the phrase 'until proven guilty' as opposed to

8    'unless proven guilty' implied to the jury that petitioner would ultimately be proven guilty." First

9    Amended Petition, p. 25.

10       The Nevada Supreme Court denied this claim, finding that the instruction was proper. *See*

11   Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30, p. 10 n.4.

12       This claim, too, is without merit. Aviles-Perez cites no United States Supreme Court

13   precedent holding it to be a federal constitutional violation for a jury instruction to use the phrase

14   "innocent until proven guilty."

15       The state courts' denial of the claims asserted by Aviles-Perez in Ground 4 of his first

16   amended habeas petition was not contrary to, or an unreasonable application of, clearly established

17   federal law, as determined by the Supreme Court of the United States, and the state courts' rulings in

18   this regard were not based on an unreasonable determination of the facts in light of the evidence

19   presented. *See* 28 U.S.C. § 2254(d). Aviles-Perez does not show habeas corpus relief to be

20   warranted. The court will deny habeas corpus relief with respect to his claims in Ground 4.

21       <u>Ground 5</u>

22       In Ground 5, Aviles-Perez claims that he was denied his federal constitutional rights because

23   the trial court improperly admitted inadmissible hearsay evidence at trial. First Amended Petition,

24   pp. 25-26. In particular, Aviles-Perez claims that admission of testimony by K.A., concerning out-

25   of-court statements made by her and others, violated his federal constitutional right to confront the

26   witnesses against him. *Id*.

27

1    The Nevada Supreme Court rejected this claim on Aviles-Perez's direct appeal.  *See* Order

2   Affirming in Part, Reversing in Part and Remanding, Exhibit 30, p. 2 n.1.

3    In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause of the

4   Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial

5   unless he was unavailable to testify, and the defendant had ... a prior opportunity for

6   cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  Not all hearsay

7   implicates the Confrontation Clause; the dispositive question is whether the statement is

8   "testimonial." *Id*. at 51.  While the Court in *Crawford* declined to provide a comprehensive

9   definition of "testimonial," *see id*. at 68, the Court stated "[v]arious formulations of [the] core class

10  of 'testimonial' statements:"

11        ex parte in-court testimony or its functional equivalent -- that is, material such as
          affidavits, custodial examinations, prior testimony that the defendant was unable to
12        cross-examine, or similar pretrial statements that declarants would reasonably expect
          to be used prosecutorially; extrajudicial statements contained in formalized
13        testimonial materials, such as affidavits, depositions, prior testimony, or confessions;
          statements that were made under circumstances which would lead an objective
14        witness reasonably to believe that the statement would be available for use at a later
          trial.

15

16  *Id*. at 51-52 (internal quotation marks, ellipsis, and citations omitted).  In *Crawford*, the Court held

17  that the defendant's right of confrontation was violated because the trial court admitted evidence

18  regarding his wife's statements in response to police interrogation, and she did not testify at trial.  *Id*.

19  at 40-42, 65-69. The Court found the statements to be testimonial, because she made them "while in

20  police custody, herself a potential suspect in the case." *Id*. at 65-69.  Subsequently, in *Davis v.*

21  *Washington*, the Court held that statements made during a 911 call were nontestimonial because the

22  "circumstances objectively indicat[e] that the primary purpose of the interrogation [was] to enable

23  police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 827-28

24  (2006); *see also Ohio v. Clark*, 576 U.S. ___, 2015 WL 2473372, at *6 (2015) (holding that a child's

25  statements to teachers concerning abuse by the defendant were not testimonial because the primary

26  purpose of the conversation was to "identify [ ] and end[ ] the threat" of violence during "an ongoing

emergency"); *Michigan v. Bryant*, 562 U.S. 344, 361 (2011) (stating that "the prospect of fabrication in statements given for the primary purpose of resolving [an] emergency is presumably significantly diminished").  In contrast, statements made to the police during an interview at a witness's home about a domestic violence incident were testimonial.  *Davis*, 547 U.S. at 829-30.  There was no ongoing emergency, and "the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution."  *Id.* at 822, 829-30; *see also United States v. Brooks*, 772 F.3d 1161, 1169-70 (9th Cir.2014) (holding that responses to a U.S. Postal Inspector's questions were testimonial because "a reasonable person would have understood the primary purpose to be investigative").

With respect to most of the out-of-court statements that appear to be subjects of this claim, Aviles-Perez makes no serious effort to show them to be "testimonial" in nature.  *See* First Amended Petition, pp. 25-26; Reply, pp. 27-29.

With regard to out-of-court statements made at the family meeting after K.A.'s mother observed her father in bed with her, Aviles-Perez makes the following argument:

> Many of the hearsay statements that came in at trial were made during the conversation around the table at the family home the evening that Cynthia allegedly walked into the room to see Aviles-Perez in bed with K.A.  The discussion at the table was had in the context of whether to call the police, and were made in contemplation of legal action.  Ex. 12 at 45-46.  The "primary purpose" of eliciting the statements was to show criminal liability for past events, making those statements testimonial in nature.  *Michigan v. Bryant*, 131 S.Ct. 1143, 1155 (2011); *Davis v. Washington*, 547 U.S. 813, 822 (2006).  According to K.A.'s own testimony, the only time she told her mother about the allegations was during the conversation about whether to involve the police.  Ex. 12 at 45.  She also testified that her mom told her she "made it the wrong choice for not putting [her] dad in jail."  *Id.*  The conversation at the dinner table was had in contemplation of criminal action, and was clearly testimonial in nature.  The hearsay statements from that conversation that were admitted at trial violated Aviles-Perez's right to confrontation pursuant to the Sixth Amendment.

Reply, pp. 28-29.

Aviles-Perez does not specify which statements, by whom, at the family meeting, he refers to in this argument. It appears to the court that this argument is meant to relate to statements made by K.A.'s mother at the family meeting, as she was, by the time of the trial, deceased, and therefore

1   unavailable to testify.  But, regardless, the court finds that no statements made at the family meeting,

2   by anyone, were testimonial in nature.  The family meeting was simply a discussion among family

3   members, do decide what to do, albeit regarding a serious matter.  It was not an interrogation or an

4   interview.  It was not part of an investigation.  It was not such that anyone would have expected

5   statements made at the family meeting to be used in a prosecution, or at a trial.

6          The state courts' denial of this claim was not contrary to, or an unreasonable application of,

7   clearly established federal law, as determined by the Supreme Court of the United States, and the

8   state courts' ruling in this regard was not based on an unreasonable determination of the facts in light

9   of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Aviles-Perez does not show habeas corpus

10  relief to be warranted.  The court will deny habeas corpus relief with respect to Ground 5.

11         Ground 6

12         In Ground 6, Aviles-Perez claims that he was denied his federal constitutional rights because

13  there was insufficient evidence presented at trial to sustain his convictions.  First Amended Petition,

14  pp. 26-27.

15         On Aviles-Perez's direct appeal, the Nevada Supreme Court denied this claim, as follows,

16  after setting forth a summary of the evidence presented at trial (quoted above at p. 2):

17              The above evidence, viewed in the light most favorable to the
            prosecution, sufficiently established that Aviles-Perez committed sexual
18          assault by subjecting K.A. to sexual penetration without her consent.  *See*
            NRS 200.366(1).  Likewise, the evidence sufficiently established that Aviles-Perez
19          committed five separate lewd acts upon K.A.'s body "with the intent of arousing,
            appealing to, or gratifying the lust or passions or sexual desires" of himself or K.A.
20          NRS 201.230(1).

21  Order Affirming in Part, Reversing in Part and Remanding, Exhibit 30, p. 10.

22         The Due Process Clause of the federal constitution "protects the accused against conviction

23  except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

24  which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  In a federal habeas corpus action, in

25  reviewing the sufficiency of the evidence to support a conviction, the court is to determine "whether,

26  after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

30

1   could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

2   *Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  The Supreme Court has emphasized that

3   "*Jackson* claims face a high bar in federal habeas proceedings...." *Coleman v. Johnson*, 132 S.Ct.

4   2060, 2062 (2012) (per curiam).  Only if no rational trier of fact could have found proof of guilt

5   beyond a reasonable doubt, has there been a due process violation. *Jackson*, 443 U.S. at 324; *see*

6   *also Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992), *cert. denied*, 510 U.S. 843 (1993).

7         After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional

8   layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir.2005).  Generally, a federal

9   habeas court must ask whether the operative state court decision reflected an unreasonable

10   application of *Jackson* to the facts of the case. *Coleman*, 132 S.Ct. at 2062; *Juan H.*, 408 F.3d at

11   1275 (quoting 28 U.S.C. § 2254(d)).  Thus, if the state court affirms a conviction under *Jackson*, the

12   federal court must apply section 2254(d)(1) and decide whether the state court's application of

13   *Jackson* was objectively unreasonable. *See McDaniel v. Brown*, 558 U.S. 120, 132 (2010); *see also*

14   *Boyer v. Belleque*, 659 F.3d 957, 964-65 (9th Cir.2011).

15         In this case, it is plain that there was sufficient evidence presented at trial to support Aviles-

16   Perez's convictions.  K.A. testified, and described Aviles-Perez's actions in detail.  Her testimony,

17   was corroborated in certain respects by testimony of A.A. and P.F. *See* summary of evidence, as

18   stated by Nevada Supreme Court, *supra*, p. 2.  It is beyond reasonable dispute that a rational trier of

19   fact could have found the essential elements of Aviles-Perez's crimes beyond a reasonable doubt.

20         The state courts' denial of this claim was not contrary to, or an unreasonable application of,

21   clearly established federal law, as determined by the Supreme Court of the United States, and the

22   state courts' ruling in this regard was not based on an unreasonable determination of the facts in light

23   of the evidence presented. *See* 28 U.S.C. § 2254(d).  Aviles-Perez does not show habeas corpus

24   relief to be warranted.  The court will deny habeas corpus relief with respect to Ground 6.

25

26

1    Ground 7

2          In Ground 7, Aviles-Perez claims that the cumulative effect of errors that occurred during his

3    trial resulted in a violation of his federal constitutional rights.  First Amended Petition, pp. 27-28.

4          The court has considered cumulatively the errors described in Grounds 1 and 3, that arguably

5    occurred at trial, and that this court found, individually, did not prejudice Aviles-Perez.  The court

6    finds that those alleged errors, considered cumulatively, did not prejudice Aviles-Perez.  The state

7    courts' denial of Aviles-Perez's cumulative error claim was not contrary to, or an unreasonable

8    application of, clearly established federal law, as determined by the Supreme Court of the United

9    States, and the state courts' ruling in this regard was not based on an unreasonable determination of

10   the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Aviles-Perez does not show

11   habeas corpus relief to be warranted.  The court will deny habeas corpus relief with respect to

12   Ground 7.

13   Certificate of Appealability

14         The standard for issuance of a certificate of appealability calls for a "substantial showing

15   of the denial of a constitutional right."  28 U.S.C. §2253(c).  The Supreme Court interpreted

16   28 U.S.C. §2253(c) as follows:

17             Where a district court has rejected the constitutional claims on the merits, the
               showing required to satisfy § 2253(c) is straightforward:  The petitioner must
18             demonstrate that reasonable jurists would find the district court's assessment of the
               constitutional claims debatable or wrong.
19

20   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

21   (9th Cir. 2000).  The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*,

22   537 U.S. 322 (2003).  The Court stated in that case:

23             We do not require petitioner to prove, before the issuance of a COA, that some jurists
               would grant the petition for habeas corpus.  Indeed, a claim can be debatable even
24             though every jurist of reason might agree, after the COA has been granted and the
               case has received full consideration, that petitioner will not prevail.  As we stated in
25             *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the
               showing required to satisfy § 2253(c) is straightforward: The petitioner must
26

32

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

The court has considered Aviles-Perez's claims with respect to whether any satisfy the standard for issuance of a certificate of appeal.  The court will issue a certificate of appealability with respect to Grounds 1E, 2, and  5.

**IT IS THEREFORE ORDERED** that petitioner Alejandro Aviles-Perez's First Amended Petition for Writ of Habeas Corpus (ECF No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner is granted a certificate of appealability with respect to Grounds 1E, 2, and  5.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT ACCORDINGLY.**

Dated this 25th day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE